734 So.2d 537 (1999)
Paula C. TODD, Appellant,
v.
Kenneth M. TODD, Appellee.
No. 98-3684.
District Court of Appeal of Florida, First District.
May 27, 1999.
*538 Nancy N. Nowlis of Zisser, Robison, Brown, Nowlis and Wedner, P.A., Jacksonville, for Appellant.
Wayne D. Clance, Jacksonville, for Appellee.
PER CURIAM.
In this appeal from a final judgment of dissolution of marriage, the former wife seeks review of three issues: (1) the award to the former husband of exclusive use and possession of the marital home; (2) the amount of alimony which the former husband was ordered to pay to the former wife; and (3) the amount of the attorney's fee award to the former wife. We reverse in regard to the first two issues and remand the final judgment for further proceedings.
*539 The former husband filed a petition for dissolution of the parties' 19-year marriage. The petition reflects that the parties have one child, a son, born November 8, 1985. The former wife filed an answer and a counter-petition for dissolution of marriage. Each party requested, among other things, primary residential custody of their son, exclusive use and possession of the marital home, and child support.
The unreported final hearing took place May 20, 1998. On June 5, 1998, the trial court entered an order granting the former husband immediate primary custody of the parties' child, and directing the former wife to vacate the marital home by 5:00 p.m., June 7, 1998.[1] The former wife was authorized to remove only her personal effects, such as clothing.
The record reflects that the parties had been unable to agree amicably on a division of personal property. On August 12, 1998, the trial court conducted a hearing which had been scheduled to address the property issues and attorney's fees.
The next hearing was conducted August 19, 1998. Outside the presence of the parties, the court and the parties' attorneys reviewed the various provisions to be included in the proposed final order. With regard to the provisions for the former husband's exclusive use and occupancy of the marital home, the trial court indicated the order should specify that the husband's use and possession would terminate when the parties' child is no longer eligible to receive child support, or the husband is no longer the primary custodial parent. The former wife's attorney suggested the husband's remarriage would constitute another reason for termination of the husband's exclusive use and possession. The trial court expressed the view that the husband's remarriage would not necessarily change the disposition of the marital residence. After the parties entered chambers, and after discussion concerning the visitation provisions to be included in the final judgment, the hearing concluded without a final disposition of personal property.
On August 21, 1998, the trial court issued written "Findings of Fact." The court placed primary physical custody of the parties' son with the husband, and awarded the marital home to the husband "until the child turns 18, graduates from high school, marries, becomes self supporting or dies." With regard to alimony and child support, the court imputed an annual salary of $18,200.00 to the former wife. The court found the former wife was entitled to permanent periodic alimony due to the length of the marriage and her present and continuing inability to earn much over $20,000.00 per year, while the former husband has an income of $50,000.00, with employee benefits. The "Findings" document states in pertinent part:
The Court intends to employ the following formula for division of the imputed family income for purposes of determining child support and alimony.
The Court finds the Wife's needs will be approximately one-third of the total household income available after the imputation. Allowing a figure of $750 a month in permanent alimony will, after calculating in a guideline child support amount of $387 monthly, leave her with approximately $1,523 in total monthly income. The Husband's net income plus child support will be $2,997.62, or almost two-thirds of the total family income.
The record contains the attorney's fee statement submitted by wife's counsel, reflecting a total fee in the amount of $7,896.25.
The Final Judgment of Dissolution of Marriage was filed August 21, 1998. In *540 the final judgment, the court ordered the former wife to pay child support in the amount of $387.00 per month. The former husband was directed to pay permanent periodic alimony in the amount of $750.00 per month. The former husband was awarded exclusive use and possession of the marital home until:
(A) He is no longer the primary custodian of the minor child or
(B) The child reaches the age of 18 or graduates from high school, whichever shall last occur, or
(C) The child dies, becomes emancipated or marries or
(D) Further Order of this Court.
The court divided the parties' personal property, and specifically reserved jurisdiction "(A) to enter any and all Orders necessary to be entered to implement this Final Judgment, including QUADRO'S (B) to enforce or modify this Final Judgment upon proper application by either party except as to paragraph one hereof."
On August 31, 1998, the former wife's attorney filed a motion for rehearing or amendment of the final judgment. Rehearing was denied summarily.
With regard to the first issue concerning the trial court's disposition of the marital residence, appellant raises two sub-issues, both of which have merit. First, appellant maintains the court erred in awarding exclusive use and possession of the marital home to the former husband without including a provision that such use and possession would terminate in event of the former husband's remarriage. We agree. An award of exclusive use and possession of the marital home must serve a special purpose, such as providing a benefit for a minor child. See Kirkland v. Kirkland, 568 So.2d 494, 495-496 (Fla. 1st DCA 1990), citing Duncan v. Duncan, 379 So.2d 949 (Fla.1980). See also Sency v. Sency, 478 So.2d 432, 433 (Fla. 5th DCA 1985)("Exclusive possession given an exspouse and children of a marriage always constitutes an aspect of child support in kind.").
An award of exclusive use and possession should specify the period of time for possession, and should include an express provision for termination of exclusive use and possession when the minor child attains the age of eighteen, as well as a provision that the award may be terminated if the party in residence remarries. See Kirkland, 568 So.2d at 496; Messal v. Messal, 424 So.2d 932, 934 (Fla. 1st DCA 1983); White v. White, 413 So.2d 132 (Fla. 1st DCA 1982); Savage v. Savage, 556 So.2d 1213, 1214 (Fla. 2d DCA 1990); Harvey v. Harvey, 411 So.2d 324, 325 (Fla. 5th DCA 1982). It is error to extend exclusive use and possession of the marital home beyond the attainment of majority of a minor child, or remarriage of the party in residence, in the absence of a showing of special circumstances to support continuation of exclusive use and possession. See Wilson v. Wilson, 657 So.2d 961 (Fla. 1st DCA 1995). Accord Morgenstern v. Morgenstern, 619 So.2d 327, 328 (Fla. 3d DCA 1993).
Second, appellant maintains the final judgment is silent as to the parties' obligation to pay ownership expenses of the marital home. In addition, no provision was made in the final judgment with regard to credits or setoffs when the marital home is sold. Appellee responds that the statutory clarity of section 61.077, Florida Statutes (1997), obviates any duty of the circuit court to restate statutory absolutes. Section 61.077, Florida Statutes, provides in pertinent part:
A party is not entitled to any credits or setoffs upon the sale of the marital home unless the parties' settlement agreement, final judgment of dissolution of marriage, or final judgment equitably distributing assets or debts specifically provides that certain credits or setoffs are allowed or given at the time of the sale....
*541 The effective date of the act was October 1, 1997. See Ch. 97-249, § 3, Laws of Fla. Section 2 of the act states: "The provisions of this act apply to all settlement agreements entered into or actions filed on or after October 1, 1997." In this case, the petition for dissolution of marriage was filed January 14, 1997, before the effective date of section 61.077. Moreover, there was no settlement agreement which might have served as an alternative means of bringing the sale of the marital home within the provisions of section 61.077.
The final judgment of dissolution of marriage is silent with respect to responsibility for mortgage payments, taxes, insurance, and maintenance of the marital home. The judgment also is silent with respect to credits or setoffs upon sale of the marital home. On remand, the trial court should include provisions in the final judgment concerning responsibility for the expense associated with the marital home, and should specify whether credit is to be applied for any part of those costs at final sale.
With regard to the second issue, appellant maintains the trial court erred in its determination of the amount of alimony awarded to the former wife. The statute applicable, section 61.08, mandates that a court "include findings of fact relative to the factors enumerated in subsection (2) supporting an award or denial of alimony." Subsection (2) of the statute sets forth seven economic factors which the court is required to consider in its determination of an alimony award. Reviewing courts have assumed the mandatory requirement is as applicable to cases in which an amount of alimony is at issue, as it is in a determination of entitlement to alimony. See McCarty v. McCarty, 710 So.2d 713, 714 (Fla. 1st DCA 1998). The wife's earning ability is one factor to be considered in an award of alimony, but is not by itself dispositive, where, "based on the factors in section 61.08, need is demonstrated and the husband has the ability to pay." See Fabre v. Levine, 618 So.2d 317 (Fla. 1st DCA 1993); Garces v. Garces, 704 So.2d 1106, 1107 (Fla. 3d DCA 1998). See also Lowman v. Lowman, 724 So.2d 648, 650 (Fla. 2d DCA 1999).
It is improper to use a formula to determine the amount of permanent alimony. See McClung v. McClung, 465 So.2d 637, 638 (Fla. 2d DCA 1985). In McClung, the trial court awarded the wife permanent periodic alimony in an amount equal to fifty percent of the combined total net incomes of the parties. The court concluded the use of the formula was error, noting that under the formula, if the husband's income increased, the wife's alimony would increase even if her needs did not. See id.
In this case, the findings concerning the alimony award appear in the trial court's written findings of fact. In paragraph four of the final judgment, the court established the amount of alimony, and directed that payments should be made on the first and fifteenth of each month. In the written findings, the court considered the duration of the marriage; the financial resources of each party; the former wife's present and continuing inability to earn more than $20,000.00 annually; the contribution of each party to the marriage; and the former wife's need to maintain a home in which the parties' son would have a room of his own for visitation purposes. Significantly, the court did not consider the marital assets and liabilities distributed to each party. The court then used a formula to determine the former wife's needs would be one-third of the total household income available after imputing an annual income of $18,200.00 to the former wife.
We believe the court's method of determining an amount of alimony suffers the infirmities discussed in McClung, and also fails to give proper consideration to the former wife's needs and the former husband's ability to pay. Moreover, there is nothing to indicate the trial court considered all of the factors enumerated in section *542 61.08(2). Although the court made each party equally responsible for all marital debt, and awarded each party one-half interest in the stock, savings, and retirement accounts, scrutiny of the seemingly equal division reveals a basic unfairness. As a practical matter, to establish a home for herself which includes a room for the parties' son, the former wife must obtain sufficient funds to pay first and last month's rent, and utility and phone deposits. The former wife will incur moving expenses and she will have the expense of buying other furnishings and household goods sufficient to begin a separate life which will accommodate visits from her son. The only means available to the former wife to meet these expenses appear to be the funds she may realize from stock sales or funds withdrawn from retirement accounts.
Conversely, the former husband has none of the expense associated with establishing a new home. While he will be required to replace a few household items, most of the marital furnishings will remain with the home. The court recognized the former husband's superior earning ability, yet seems to have formulated an alimony and distribution plan which is inequitable to the wife.[2]
The problems with the amount of the alimony award are apparent even without a transcript of the final hearing. In the circumstances of this case, we are constrained to reverse and remand the permanent periodic alimony award, with directions to readdress the amount of the alimony award using the factors specified in section 61.08(2).
In summary, we reverse the final judgment and remand with instructions to (1) include a provision that exclusive use and possession of the marital home will cease upon remarriage or death of the former husband; (2) allocate financial responsibility as to the mortgage, taxes, and other costs associated with the marital home; and (3) readdress the issue of alimony, using the factors specified in section 61.08(2). Finally, in the event the court changes the amount of the alimony award, the court is directed to reconsider all other economic aspects of the final judgment (including equitable distribution, child support, and attorney fees), in light of those changes and consistent with this opinion.
Accordingly, the final judgment of dissolution of marriage is reversed and remanded for further proceedings consistent with this opinion.
BOOTH, JOANOS and WEBSTER, JJ., CONCUR.
NOTES
[1] An order entered February 2, 1998, indicates that at that time, the parties agreed to continue to share the marital residence, with each party having exclusive use of a separate bedroom. The order directed that the parties were to remain in joint custody and control of their child, and were to continue to apply their earned income to household obligations and current debts.
[2] Among other things, the court allocated one-third of the family income to the former wife, but required her to pay one-half of the marital debt.